**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE NEMPHOS AS | ) | |
| Legal Guardian for C.G.N. | ) | |
| A Minor under the Age of | ) | |
| Eighteen | ) | |
| 500 Rhapsody Court | ) | |
| Hunt Valley, MD 21030 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:12-cv-2718 |
| | ) | |
| | ) | |
| NESTLE USA, INC. | ) | |
| 715 N. Van Buren St. | ) | |
| Milwaukee, WI 53202 | ) | |
| | ) | |
| Serve: | ) | |
| The Corporation Trust Co, | ) | |
| 351 West Camden Street | ) | |
| Baltimore, MD 21201 | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| NESTLE WATERS NORTH | ) | |
| AMERICA, INC. | ) | |
| 1221 Broadway | ) | |
| Oakland, CA 94612 | ) | |
| | ) | |
| Serve: | ) | |
| The Corporation Trust Co, | ) | |
| 351 West Camden Street | ) | |
| Baltimore, MD 21201 | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| THE DANNON COMPANY, INC. | ) | |
| 120 White Plains Road | ) | |
| Tarrytown, NY 10591 | ) | |
| | ) | |
| Serve: | ) | |
| Maryland State Department | ) | |
| of Assessment and Taxation | ) | |

301 W. Preston St.              )
Room 801                       )
Baltimore, MD 21201            )
                               )
                               )
                               )
          and,                 )
                               )
GERBER PRODUCTS                )
COMPANY                        )
405 State Street               )
Fremont, MI 49413              )
                               )
          Serve:               )
          CSC – Lawyers        )
          Incorporating Service )
          Company              )
          7 St. Paul Street, Suite 1660 )
          Baltimore, MD 21202  )
                               )
          Defendants.          )

## COMPLAINT

**COMES NOW**, Plaintiff Michelle Nemphos, as legal guardian for C.G.N. a minor under the age of eighteen, (C.G.N.) by and through undersigned counsel, and files her Complaint for damages suffered by Plaintiff as a direct and proximate result of Defendants' wrongful conduct in connection with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants' nutritional products containing fluoride and alleges the following:

## PARTIES

1.      At all times relevant hereto, Plaintiff Michelle Nemphos, as legal guardian for C.G.N, was an adult resident of the State of Maryland currently residing in Hunt Valley, Maryland. At all times relevant hereto, C.G.N. was a resident of the State of Maryland.

2.     Upon information and belief, Defendant Nestlé USA, Inc. ("Nestlé") is a Delaware Corporation with its principle place of business at 715 N. Vanburen St., in Milwaukee, Wisconsin. At all relevant times hereto, Nestlé was authorized to do business, routinely did substantial business, and operated facilities located in the State of Maryland. At all relevant times, it maintained The Corporation Trust Incorporated, a registered agent in Maryland for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to its registered agent at 351 West Camden Street, Baltimore, Maryland 21201.

3.     Upon information and belief, Defendant Nestlé Waters North America, Inc. ("Nestlé Waters") is a Delaware Corporation with its principle place of business at 1221 Broadway in Oakland, California. At all relevant times hereto, Nestle Waters was authorized to do business, routinely did substantial business, and operated facilities located in the State of Maryland. At all relevant times, it maintained The Corporation Trust Incorporated, a registered agent in Maryland for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to its registered agent at 351 West Camden Street, Baltimore, Maryland 21201.

4.     Upon information and belief, Defendant The Dannon Company, Inc. ("Dannon") is a Delaware Corporation with its principle place of business at 120 White Plains Road, Tarrytown, NY 10591. At all relevant times hereto, Dannon was authorized to do business, routinely did substantial business, and operated facilities located in the State of Maryland. It is subject to the jurisdiction of this Court and may be served with process by

delivering a copy of the Summons and Complaint to the Maryland State Department of Assessments and Taxation, at 301 E. Preston St., Room 801, Baltimore, MD 21201.

5.      Upon information and belief, Defendant Gerber Products Company ("Gerber") is a Michigan corporation with its principle place of business at 405 State Street in Fremont, Michigan. At all relevant times hereto, Gerber was authorized to do business, routinely did substantial business, and operated facilities located in the State of Maryland. At all relevant times, it maintained, CSC-Lawyers Incorporating Service Company, as its registered agent in Maryland for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to its registered agent at 7 St. Paul Street, Suite 1660, Baltimore, Maryland, 21202.

## JURISDICTION

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## VENUE

7.      Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's claims occurred in this district. At all times material hereto, Defendants conducted substantial business in this district.

## NATURE OF ACTION

8.      This is an action for damages brought by Plaintiff Michelle Nemphos as legal guardian for C.G.N., a minor, under the age of eighteen, for personal injury and property

damage arising out Defendants' production and marketing of various nutritional products containing fluoride. Plaintiff C.G.N. was exposed to excessive and damaging amounts of fluoride through the consumption of Defendants' products. Defendants marketed and sold these products to C.G.N. and her parents with no warning about the likelihood of aesthetic damage to her teeth in violation of the common law of the State of Maryland.

9.      Defendants manufacture and sell nutritional products containing fluoride.

10.     Defendants knew or should have known that their products, when taken as intended, cause and contribute to an increased risk of persistent and/or permanent serious and detrimental side effects including, without limitation, dental fluorosis.

## STATEMENT OF FACTS

10.     Defendants are engaged in the manufacturing, marketing and sale of nutritional products containing fluoride. These products include, but are not limited to, bottled water, infant formula and baby food.

11.     Defendants Nestlé USA, Inc. and Nestlé Waters North America, Inc. (the "Nestlé Defendants") market and sell bottled water under the brands Deer Park and Poland Spring. The Nestlé Defendants market and sell "Deer Park Brand Natural Spring Water with Added Fluoride" which contains up to 0.8 ppm of fluoride. The 8 ounce bottles are marketed to children and sold as "the one designed with kids in mind."

12.     Defendant Dannon markets and sells bottled water for use by children such as C.G.N. under the name Fluoride to Go. Dannon markets and sells Fluoride to Go bottled water which contains up to 0.8 ppm of fluoride. The 8 ounce bottles are marketed to children and sold as "the one designed with kids in mind."

12.     Defendants Nestlé USA, Inc. also markets and sells Carnation Good Start Infant Formula, which contains fluoride.

13.     The Nestlé Defendants market and sell "Poland Spring Brand Natural Spring Water with Added Fluoride" which contains up to 0.8 ppm of fluoride. The 8-ounce bottles are marketed to children and sold as "the one designed with kids in mind."

14.     Defendant Gerber markets and sells baby food and infant formula containing fluoride.

15.     Dental fluorosis is "a condition due to ingestion of excessive amounts of fluorine; a condition in humans due to exposure to excessive amounts of fluorine or its compounds, resulting from . . . prolonged ingestion of . . . large amounts of fluorides; characterized by skeletal changes such as osteofluorosis and by mottled enamel when exposure occurs during enamel formation."[1]Fluorosis is caused by the consumption of fluoride during the time when the teeth are forming under the gums, particularly between 0- 8 years of age. The U.S. Centers for Disease Control and Prevention ("CDC") estimates that fluorosis affects 41 percent of children between the ages of 12 and 15, and the prevalence has been increasing.

17.     Dental fluorosis is caused by ingesting fluoride when the teeth are forming under the gums. Only children aged 8 years and younger are at risk since this is when permanent teeth are developing under the gums. The risk is primarily between the ages of 0 and 6, particularly for teeth that are visible in the mouth; the younger the child is when the fluoride is ingested, the greater the risk of injury.

---

[1]       http://medical-dictionary.thefreedictionary.com/fluorosis

18.     Infants consume little other than breast milk or formula during the first 0 to 6 months of life, and continue to have a high intake of liquids during their entire first year. Therefore, proportional to body weight, fluoride intake is higher for younger or smaller children than for older children, adolescents, and adults.

19.     According to the National Academies of Science, a significant portion of the amount of fluoride that a child ingests comes from ingestion of fluoride contained in drinking water.

20.     Exposure to fluoride by ingestion causes several negative impacts, including, but not limited to, dental fluorosis.

21.     Defendants promote the consumption of their nutritional products containing fluoride as *safe and without risk*. These products are specifically designed and marketed for infants and young children – those most likely to suffer long-term impacts from fluoride consumption.

22.     Because children aged 0 to 8 years are still developing their adult teeth, they do not receiveany benefit whatsoever from ingesting Defendants' fluoride-containing products.[2]Therefore, consuming Defendants' fluoride containing products posed significant risk while offering no significant benefit.

23.     Defendants failed to provide any dose control over all fluoride exposure sources to prevent overdose, poisoning and damages. Fluoride is a known cumulative poison with no undisputed health benefits. Ingesting fluoride, particularly at this young age, has no

---

[2]     Recommendations for Using Fluoride to Prevent and Control Dental Caries in the United States, U.S. Centers for Disease Control and Prevention (Aug. 17, 2001) at 4, 6-7.

significant health benefit and the ingestion of fluoride contributes to the poisoning of those who ingest it.[3] This is particularly the case with children.

24.     Defendant Gerber promotes, markets, and sells powdered infant formula containing fluoride.

25.     Despite the risks presented by including fluoride in powdered formula and the fact that there is no benefit to children who do not yet have their adult teeth, Defendant Gerber failed to warn consumers about the risks of fluoride contained in their powdered formulas containing fluoride.

26.     The Nestlé Defendants promote, market, and sell bottled water containing fluoride, including specific marketing to children aged 0 through 8 years old.

27.     Dannon promoted, marketed, and sold bottled water containing fluoride, including specific marketing to children aged 0 through 8 years old.

27.     Despite the risks presented by bottled water containing fluoride, particularly to children,Defendants, Nestlé and Dannon, failed to warn consumers about risks of fluoride contained in their products.

28.     Plaintiff C.G.N. was born on December 4, 1997.

29.     C.G.N. was not breastfed, but was fed with Nestlé's Carnation Good Start infant formula until she was one year old.

30.     At or around age 4 months, C.G.N. began eating Gerber baby food products and ate these products almost exclusively until at or around one year of age. During this period, C.G.N. also consumed Gerber brand apple juice.

31.     Beginning at or around the age of six-months, C.G.N. began drinking Defendants' bottled water containing fluoride (mixed with Gerber brand apple juice), specifically

---

[3] *See id.*

Poland Spring and Dannon Fluoride to Go fluoridated water. C.G.N.'s parents were led to believe, through Nestlé's and Dannon's marketing, that the added fluoride was beneficial to their daughter's developing teeth, and thus, purposefully set out to purchase Defendants' bottled waters containing added fluoride. Defendants' bottled water containing fluoride comprised roughly 90 percent of C.G.N.'s drinking water consumption, with the remaining 10 percent coming from the City of Baltimore.

32.     C.G.N. drank Defendants' bottled water containing fluoride until sometime in 2005, when the family switched to buying bottled water that did not contain added fluoride. C.G.N. continued to drink approximately 90 percent bottled water, no longer containing added fluoride.

32.     As a result of the ingestion of fluoride caused by Defendants' willful, reckless, and negligent promotion, marketing, and sale of nutritional products containing fluoride, C.G.N. has suffered, and continues to suffer from, physical and emotional damages related to her injuries from fluoride, which include, but are not limited to, dental fluorosis.

**COUNT I**
**STRICT LIABILITY**

33.     Plaintiff Michelle Nemphos incorporates paragraphs 1-32 as if restated herein.

34.     At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of nutritional products containing fluoride. Defendants designed, manufactured, marketed, and sold nutritional products containing fluoride to consumers, knowing it would be ingested.

35.     Nutritional products containing fluoride as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in their condition and were consumed by C.G.N. in a reasonably foreseeable and intended manner.

36.     Nutritional products containing fluoride were "defective" and "unreasonably dangerous" when they entered the stream of commerce and were received by Plaintiff, because they were dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiff have reason to believe that nutritional products containing fluoride were in a condition not suitable for its proper and intended use among consumers.

37.     Nutritional products containing fluoride were used in the manner for which they were intended and marketed, that is, for nutritional ingestion, particularly children. This use resulted in injury to C.G.N.

38.     Plaintiff was not able to discover, nor could she have discovered through the exercise of reasonable care, the dangerous and defective nature of nutritional products containing fluoride. Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured nutritional products containing fluoride in such a way as to increase the risk of harm or injury to the consumers of nutritional products containing fluoride.

39.     Nutritional products containing fluoride are defective in design because of their propensity to cause injuries such as dental fluorosis.

40.     Nutritional products containing fluoride are unreasonably dangerous because they were sold to Plaintiff without any warnings regarding, *inter alia,* the propensity of

nutritional products containing fluoride to cause personal injuries to those ingesting them under the age of eight, including, but not limited to, dental fluorosis.

41.     Defendants had knowledge and information confirming the defective, harmful and dangerous nature of their nutritional products containing fluoride. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff that those nutritional products containing fluoride cause permanent injuries including, without limitation, dental fluorosis.

42.     As a direct and proximate result of Defendants' wrongful conduct, including the defective and dangerous design and inadequate warnings regarding their nutritional products containing fluoride, C.G.N. has sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, high costs of dental care, emotional distress, and anxiety, for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE

43.     Plaintiff Michelle Nemphos incorporates paragraphs 1-42 as if restated herein.

44.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacturing, marketing, sale, and distribution of their nutritional products containing fluoride, including a duty to ensure that their nutritional products containing fluoride did not pose a significantly increased risk of injury to their users.

45.     Defendants had a duty to exercise reasonable care in the advertising and sale of their nutritional products containing fluoride, including a duty to warn Plaintiff and other

consumers, of the known dangers associated with the consumption of their nutritional products containing fluoride that were known or should have been known to Defendants at the time of the sale of their nutritional products containing fluoride to the Plaintiff.

46.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of their nutritional products containing fluoride because Defendants knew or should have known that their nutritional products containing fluoride had a propensity to cause serious injury, including, but not limited to, dental fluorosis.

46.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, labeling, sale and distribution of their nutritional products containing fluoride because Defendants knew or should have known that their nutritional products containing fluoride had a propensity to cause serious injury, including, but not limited to, dental fluorosis to children under the age of 8 years old, however they specifically marketed these nutritional products for use by children, including Plaintiff C.G.N.

47.     Defendants failed to exercise ordinary care in the labeling of their nutritional products containing fluoride and failed to issue adequate warnings to Plaintiff and the general public regarding the risk of serious injury, including, but not limited to, dental fluorosis to children under the age of 8 years.

48.     Defendants knew or should have known that C.G.N. could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

49.     Defendants breached their duty of reasonable care to Plaintiff and C.G.N. by failing to exercise due care under the circumstances.

50.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, manufacturing, sale, and

distribution of their nutritional products containing fluoride, C.G.N. ingested Defendants'

nutritional products containing fluoride and suffered severe and debilitating injuries, pain

and suffering, and economic loss, and other damages including, but not limited to, cost of

dental care, emotional distress, and anxiety, for which he is entitled to compensatory and

equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTIES**

51.     Plaintiff Michelle Nemphos incorporates paragraphs 1-50 as if restated herein.

52.     Defendants designed, formulated, tested, manufactured, marketed, sold, and

distributed nutritional products containing fluoride as has previously been alleged and

described herein.

53.     At the time Defendants marketed, sold and distributed their nutritional products

containing fluoride, Defendants knew of the use for which their nutritional products

containing fluoride were intended and impliedly warranted that their nutritional products

containing fluoride was merchantable, safe and fit for its intended purpose: namely that

C.G.N., as a child, could ingest their nutritional products containing fluoride without the

risk of injury.

54.     C.G.N., foreseeable user of Defendants' nutritional products containing fluoride,

and C.G.N.'s parents, reasonably relied upon Defendants' judgment and implied

warranties in purchasing and consuming Defendants' nutritional products containing

fluoride as intended.

55.     Defendants' nutritional products containing fluoride were defective,

unmerchantable, and unfit for ordinary use when sold, and they subjected C.G.N. to

severe and permanent injuries.

56.     Defendants breached their implied warranties because their nutritional products containing fluoride were and continue to be neither of merchantable quality nor safe for their intended use in that their nutritional products containing fluoride have the propensity to bodily harm, including but not limited to, dental fluorosis.

57.     As a direct and proximate result of Defendants' breach of the implied warranties of merchantability and fitness for its intended purpose, C.G.N. ingested Defendants' nutritional products containing fluoride and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of dental care, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IV
## FRAUD

58.     Plaintiff Michelle Nemphos incorporates paragraphs 1-57 as if restated herein.

59.     Defendants were under a duty and failed to discharge their duty to exercise reasonable care to disclose to Plaintiff the defective nature and risks that their nutritional products containing fluoride can cause severe and permanent injuries, including, without limitation, dental fluorosis, of which they had special knowledge not available to Plaintiff, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of their nutritional products containing fluoride, which were peculiarly within their knowledge, knowing that Plaintiff would rely on the presumption that no such risk existed.

60.     Defendants knew that their nutritional products containing fluoride could cause severe injuries to children, including, without limitation, dental fluorosis; indeed,

14

Defendants knew that dental fluorosis associated with the fluoride found in their nutritional products containing fluoride had occurred for years. Defendants had actual knowledge at the time of sale of their nutritional products containing fluoride to the Plaintiff that these products created a risk of serious bodily injury to its users, including, without limitation, the development of dental fluorosis.

61.    At all times during the course of dealing between Defendants and Plaintiff, Defendants knowingly and recklessly omitted and concealed information peculiarly within their knowledge to C.G.N., her parents, and to the general public - e.g., the dangers of their nutritional products containing fluoride, including the risk of injury including dental fluorosis - knowing that the general public and the Plaintiff would rely on the presumption that the dangers did not exist.

62.    Defendants actively concealed from the Plaintiff, the scientific community and the general public that the use of their nutritional products containing fluoride is unsafe as it poses a risk of permanent injury, including, but not limited to, dental fluorosis.

63.    Moreover, Defendants engaged in a marketing strategy aimed directly at children, the very population of people who are most susceptible to injury from their nutritional products containing fluoride, particularly dental fluorosis and who do not stand to benefit.

64.    The omissions, misrepresentations and concealment described in the preceding paragraphs occurred, without limitation, in the labels on their nutritional products containing fluoride, advertisements and promotional materials, and the failure to provide other special notification of the dangers of their nutritional products containing fluoride to the Plaintiff .  The Defendants' statements omitted, concealed, and misrepresented the dangers of serious injury, including, but not limited to, dental fluorosis to Plaintiff.

65.     Defendants engaged in fraud by deliberately and affirmatively concealing and failing to disclose adverse effects of their nutritional products containing fluoride to Plaintiff.

66.     Defendants knew or should have known that their representations and omissions regarding the safety of their nutritional products containing fluoride were, in fact, false and/or misleading, and actively made such representations and omissions with the intent, design, and purpose that Plaintiff and others, would rely on these representations leading to the purchase and consumption of their nutritional products containing fluoride.

67.     At all times herein, Plaintiff was unaware of the dangers of these nutritional products containing fluoride with respect to injuries related to these products, including but not limited to dental fluorosis, and were reasonably misled by the Defendants' omission of information about this danger.

68.     At all times herein, Plaintiff was unaware of the falsity underlying Defendants' statements and reasonably believed Defendants' false statements about the safety of their nutritional products containing fluoride to be true.

69.     Plaintiff did not discover, and could not reasonably have discovered, Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading and unlawful activities.

70.     Plaintiff did, and could be expected to reasonably and justifiably rely on Defendants' representations and omissions.

71.     Plaintiff justifiably relied upon, to C.G.N.'s detriment, and/or was induced by Defendants' false statements and active concealment over the safety of their nutritional

products containing fluoride, in part, because at no time did Plaintiff have the knowledge or expertise necessary to independently evaluate the safety of their nutritional products containing fluoride.

72.     Defendants' misrepresentations, concealment, suppression and omissions were made willfully, wantonly, uniformly, deliberately, or recklessly, in order to induce Plaintiff to purchase their nutritional products containing fluoride and Plaintiff and C.G.N. did reasonably and justifiably rely upon the material misrepresentations and omissions made by the Defendants about Nutritional products containing fluoride when agreeing to purchase and/or ingest their nutritional products containing fluoride.

73.     As a direct and proximate result of Defendants' false representations and/or active concealment of material facts regarding the safety and efficacy of nutritional products containing fluoride, C.G.N. ingested Defendants' nutritional products containing fluoride and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of dental care, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74.     Plaintiff Michelle Nemphos incorporates paragraphs 1-73 as if restated herein.

75.     Defendants carelessly and negligently manufactured, marketed, and sold their nutritional products containing fluoride to Plaintiff, carelessly and negligently concealed these defects from Plaintiff, and carelessly and negligently misrepresented the quality and safety of their nutritional products containing fluoride. Defendants should have realized

that such conduct involved an unreasonable risk of causing emotional distress to reasonable persons that might, in turn, result in illness or bodily harm.

76.     Defendants owed a duty to Plaintiff and C.G.N. to accurately and truthfully represent the risks associated with the ingestion of their nutritional products containing fluoride.  Defendants breached that duty by misrepresenting and/or failing to adequately warn of the risks posed by their nutritional products containing fluoride – effects of which Defendants knew or in the exercise of due diligence should have known – to Plaintiff and C.G.N.

77.     As a direct and proximate result of Defendants' wrongful conduct and breach of duty, C.G.N. has sustained and will continue to sustain severe emotional distress either due to physical injury or a rational fear of physical injury and is entitled to recovery of damages in an amount to be proven at trial. Defendants are liable to Plaintiff and C.G.N. jointly and/or severally for all general, special and equitable relief to which Plaintiff and C.G.N. is entitled by law in an amount to be proven at trial.

## COUNT VI
## MARYLAND CONSUMER PROTECTION ACT

78.     Plaintiff Michelle Nemphos incorporates paragraphs 1-77 as if restated herein.

79.     Defendants are "merchants" within the meaning of the Maryland Consumer Protection Act ("CPA"), Comm. Law, §13-101(g), and are subject to all of the CPA's provisions prohibiting unfair or deceptive trade practices including those in Md. Code Ann., Comm. Law, §§13-303 and 13-301.

80.     Defendants were under a duty and failed to discharge their duty to exercise reasonable care to disclose to Plaintiff the defective nature and risks that their nutritional products containing fluoride can cause severe and permanent injuries, including, without

limitation, dental fluorosis, of which they had special knowledge not available to Plaintiff, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of their nutritional products containing fluoride, which were peculiarly within their knowledge, knowing that Plaintiff would rely on the presumption that no such risk existed.

81.     Defendants knew that their nutritional products containing fluoride could cause severe injuries, including, without limitation, dental fluorosis; indeed, Defendants knew that dental fluorosis associated with the fluoride found in their nutritional products containing fluoride had occurred for years. Defendants had actual knowledge at the time of sale of their nutritional products containing fluoride to the Plaintiff that these products created a risk of serious bodily injury to its users, including, without limitation, the development of dental fluorosis.

82.     At all times during the course of dealing between Defendants and Plaintiff, Defendants knowingly and recklessly omitted and concealed information peculiarly within their knowledge to C.G.N., her parents, and to the general public - e.g., the dangers of their nutritional products containing fluoride, including the risk of injury including dental fluorosis - knowing that the general public and the Plaintiff would rely on the presumption that the dangers did not exist.

83.     Defendants actively concealed from the Plaintiff, the scientific community and the general public that the use of their nutritional products containing fluoride is unsafe as it poses a risk of permanent injury, including, but not limited to, dental fluorosis.

84. Moreover, Defendants engaged in a marketing strategy aimed directly at children, the very population of people who are most susceptible to injury from their nutritional products containing fluoride, particularly dental fluorosis and who do not stand to benefit.

85. The omissions, misrepresentations and concealment described in the preceding paragraphs occurred, without limitation, in the labels on their nutritional products containing fluoride, advertisements and promotional materials, and the failure to provide other special notification of the dangers of their nutritional products containing fluoride to the Plaintiff. The Defendants' statements omitted, concealed, and misrepresented the dangers of serious injury, including, but not limited to, dental fluorosis to Plaintiff.

86. Section 13-408 of the Maryland Consumer Protection Act, MD. COM. LAW CODE ANN. §§ 13-101, *et. seq.*, authorizes Plaintiff to bring an action to recover for injury or loss sustained as a result of a practice prohibited by the Act.

87. Defendants' failure to disclose and its concealment from Plaintiff of the dangers of their products containing fluoride constitutes unfair and deceptive trade practices in violation of the CPA, MD. COMM. LAW §§13-303 and 13-301(1), (2)(i) and (iv), (3), and 9(i) by, among other things:

    a. Engaging in unfair or deceptive trade practices as defined in Section 13-301(1) by making false and misleading oral and written statements that had the capacity, tendency, or effect of deceived or misleading Maryland consumers, including Plaintiff;

    b. Engaging in unfair or deceptive trade practices as defined in Section 13-301(2)(i) and (iv) by making false and misleading statements that their

products had a benefit or characteristic that they did not have and that they were of a safe quality, and they were not;

c.  Engaging in unfair or deceptive trade practices as defined in Section 13-301(3) by failing to state material facts, the omission of which deceived or tended to deceive;

d.  Engaging in unfair or deceptive trade practices as defined in Section 13-301(9) through their deception, fraud, misrepresentation, and knowing concealment, suppression, and omission of material facts.

88.   If Plaintiff had known the risk of ingesting these products Plaintiff would not have purchased or used them.

89.   As a direct and proximate result of Defendants' violations of the Consumer Protection Act, C.G.N. ingested Defendants' nutritional products containing fluoride and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of dental care, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## RELIEF SOUGHT

90.   Plaintiff Michelle Nemphos incorporates paragraphs 1-89 as if restated herein.

91.   WHEREFORE, Plaintiff Michelle Nemphos prays for relief against Defendants, jointly and severally, as follows:

92.   Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff and C.G.N. for all her injuries and damages, both past and present;

93.     Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff and C.G.N. for all of her injuries and damages, both past and present, including but not limited to, past and future dental expenses, emotional damages and pain and suffering.

94.     Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to C.G.N. in an amount sufficient to punish Defendant and deter future similar conduct

95.     Double or triple damages as allowed by law;

96.     Attorneys' fees, expenses, and costs of this action;

97.     Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

98.     Such further relief as this Court deems necessary, just, and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

PAULSON & NACE, PLLC

/s/Christopher T. Nace_____
Christopher T. Nace, Esquire
District Court of Maryland Bar No. 16442
1615 New Hampshire Avenue, N.W.
Washington, DC 20009-2520
(202) 463-1999

Christopher T. Nidel, Esquire
*To be admitted pro hac vice*
2002 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 558-2030
*Counsel for Plaintiff*