IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE NEMPHOS ex rel.        :
C.G.N.,
                                :
        Plaintiff,
                                :
v.                                    Civil Case No. GLR-12-2718
                                :
NESTLÉ USA, INC., et al.,
                                :
        Defendants.
                                :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Nestlé USA, Inc., Nestlé Waters North America, Inc. (jointly, "Nestlé"), Gerber Products Company, Inc. ("Gerber"), and The Dannon Company, Inc.'s ("Dannon") (collectively, the "Defendants") Motions to Dismiss.[1]  (ECF Nos. 16, 17).  This case concerns Plaintiff Michelle Nemphos's allegations that the Defendants' products exposed her daughter to excessive amounts of fluoride and caused aesthetic damage to her teeth, without warning of the risk of such harm, in violation of Maryland statutory and common law.  Specifically, Nemphos alleges (1) strict liability, (2) negligence, (3) breach of implied warranties, (4) fraud, (5) negligent infliction of emotional distress,[2] and (6) a violation

_____

[1] Nestlé and Gerber originally filed a Motion to Dismiss (ECF No. 16), in which Dannon joined (ECF No. 17).
[2] Nemphos has since conceded that Maryland law does not recognize an independent claim for negligent infliction of emotional distress.

of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301 et seq. (West 2013).

The issues have been fully briefed and no hearing is necessary.  See Local Rule 105.6 (D.Md. 2011).  For the reasons outlined below, the Motions will be granted.

## I.   BACKGROUND[3]

Nemphos seeks relief on behalf of her minor daughter, C.G.N., for damages resulting from the consumption of the Defendants' products containing fluoride.  The prolonged ingestion of excessive fluoride during tooth development causes dental fluorosis, which is characterized by mottled enamel and pitting of the teeth.  Children are particularly at risk of fluoride overexposure, and developing dental fluorosis, from birth to age eight when the permanent teeth develop beneath the gums.

Nestlé and Dannon manufacture, market, and sell fluoridated bottled water.  They produce the Deer Park Brand Natural Spring Water with Added Fluoride, Poland Spring Brand Natural Spring Water with Added Fluoride, and Fluoride to Go bottled water, all of which contain up to 0.8 ppm of fluoride.  Nestlé and Dannon market all three bottled water brands with the slogan "the one designed with kids in mind."  (Compl. ¶¶ 11-13, ECF No. 1).

---

[3] Unless otherwise noted, the following facts are stated as alleged in the Complaint (ECF No. 1).

Nestlé also manufactures, markets, and sells Carnation Good Start Infant Formula, which contains fluoride. Gerber manufactures, markets, and sells baby food and powdered infant formula containing fluoride. The Defendants marketed their products to children without providing any warning regarding the risks of excessive fluoride exposure for children aged zero through eight.

C.G.N. was born on December 4, 1997. From birth to age one, C.G.N. consumed Nestlé's Carnation Good Start infant formula. She was not breastfed. From the time C.G.N. was four months old until she turned one, she also consumed Gerber baby food products almost exclusively. At six months old, C.G.N. began consuming a mixture of Gerber apple juice, which Nemphos does not allege to have contained fluoride, with Nestlé and Dannon's fluoridated bottled water. C.G.N.'s parents specifically purchased Nestlé and Dannon's bottled water because they believed it was beneficial to their daughter's developing teeth. Until 2005, approximately ninety percent of the water C.G.N. consumed was Nestlé and Dannon's fluoridated bottled water. The remaining amount C.G.N. consumed was tap water from Baltimore, Maryland.

In or around 2005, C.G.N. stopped consuming Nestlé and Dannon's bottled water and began drinking bottled water with no added fluoride. Ninety percent of the water C.G.N. continued to

drink was bottled water with no added fluoride.  Nemphos alleges that C.G.N. suffered "physical and emotional damages . . . [including] dental fluorosis" as a result of ingesting the Defendants' bottled water, baby food, and infant formula. (Compl. ¶ 32).  She also alleges that the Defendants promoted the consumption of their products containing fluoride as safe and without risk despite the "significant risk" young children would suffer long-term effects from fluoride consumption.  (Id. ¶¶ 21-22).

On September 11, 2012, Nemphos filed a Complaint against the Defendants in this Court on her daughter's behalf.  (ECF No. 1).  On January 3, 2013, Nestlé and Gerber jointly filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 16).  Also on January 3, 2013, Dannon filed a Motion to Dismiss for Failure to State a Claim and Notice of Joinder in Nestle and Gerber's Motion. (ECF No. 17).

## II.  DISCUSSION

### A.  Standard of Review

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation

marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005).

Moreover, this matter is before the Court through its diversity jurisdiction. This Court is thus obligated to interpret the law in accordance with the Court of Appeals of Maryland. Ellis v. Grant Thortnon LLP, 530 F.3d 280, 287 (4th Cir. 2008) (citing Wells v. Liddy, 186 F.3d 505, 527–28 (4th Cir. 1999)). Where the law is unclear, this Court must rule how

it appears the Court of Appeals of Maryland would rule, and it may consider restatements, treatises, and recent decisions of the Court of Appeals.  <u>Wells</u>, 186 F.3d at 527–28.

**B.   <u>Analysis</u>**

    **1.   Preemption**

        **a.   Non-Identical State Law Requirements**

The Defendants argue Nemphos's claims are preempted by federal law because they are based on common law duties that would require the Defendants' products to contain less fluoride than the Food and Drug Administration ("FDA") allows or bear a warning that the FDA does not require.  Nemphos contends that her claims are not preempted because she only seeks damages for her daughter's injuries and does not seek to impose state requirements not identical with the FDA's regulations.  For the same reasons stated in <u>Mills v. Giant of Maryland, LLC</u>, 441 F.Supp.2d 104 (D.D.C. 2006), <u>aff'd</u> 508 F.3d 11 (D.C. Cir. 2007), the Court agrees with the Defendants and concludes: (1) the Defendants' products are subject either to a standard of identity or labeling regulations under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 <u>et seq.</u> (2012), and (2) the relief Nemphos seeks would impose a state law duty not identical to the FDCA's labeling requirements.

The preemption doctrine is based on the Supremacy Clause of the United States Constitution.[4]  Duvall v. Bristol-Myers-Squibb Co., 103 F.3d 324, 328 (4th Cir. 1996).   Preemption is the standard by which a state law is invalid to the extent it conflicts with federal legislation.   Id.   It can be either express or implied.   Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000).   Express preemption is "present when Congress's intent to preempt state law is 'explicitly stated in the statute's language.'"   Mills, 441 F.Supp.2d at 106 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).   Implied preemption is "applicable 'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"   Id. (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)).

The FDCA expressly preempts state food and bottled water labeling requirements that are non-identical to its own requirements.   Congress enacted the Nutrition Labeling and Education Act of 1990 ("NLEA"), Pub.L.No. 101-535, 104 Stat. 2353 (1990) (codified as amended at 21 U.S.C. §§ 301, 321, 337,

---

[4] The Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."   U.S. Const. art. VI, cl. 2.

343, 343-1, 345, 371 (2012)), which amended the FDCA and authorized the FDA to establish uniform national nutrition labeling standards.  Mills, 441 F.Supp.2d at 106.

The FDCA provides in pertinent part:

(a) [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—

(1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title . . . .

21 U.S.C. § 343-1(a)(1).

Section 343-1 "prevent[s] State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients."  H. Rep. No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337.  It does not, however, preclude all state requirements.  State laws are not preempted if the labeling requirements they impose are identical to the FDCA's requirements.  See § 343-1(a)(5) (prohibiting requirements that are not identical); Beverages: Bottled Water, 60 Fed.Reg. 57076, 57120 (Nov. 13, 1995) (codified at 21 C.F.R. pts. 103, 129, 165 & 184) ("[I]f the State requirement is identical to the Federal law, there is no issue of preemption."); Vt. Pure Holdings, Ltd. v. Nestlé Waters N. Am., Inc., No. Civ.A.03-11465 DPW, 2006 WL 839486, at *5 (D.Mass. Mar. 28, 2006) (same); Reyes v.

McDonald's Corp., Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *6 (N.D.Ill. Nov. 8, 2006) (same); Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) (same).

When the state statute or cause of action would impose a requirement that is not the same as the federal requirement, it is preempted. See, e.g., Mills, 441 F.Supp.2d at 108-09 (finding that requiring a warning on milk products regarding lactose intolerance exceeds the requirements of the NLEA and is preempted); In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig., 588 F.Supp.2d 527, 536-37 (S.D.N.Y. 2008) (holding that requiring a disclosure that purified water was from tap water rather than other sources went beyond the requirements of disclosure set forth by the NLEA).

Mills is perhaps the most instructive case. The plaintiffs in Mills brought a putative class action suit against nine milk sellers, requesting they adopt a warning label on their milk products alerting customers about the possible risks of lactose intolerance. Mills, 441 F.Supp.2d at 105. The plaintiffs alleged they had exhibited symptoms consistent with lactose intolerance after ingesting the milk products. Id. They also alleged that, despite the prevalence of lactose intolerance among American adults, the milk sellers "propagated the myth that milk is a necessary part of a healthy diet while

simultaneously stifling information about the incidence of lactose intolerance." Id. Examining whether 21 U.S.C. § 343-1(a)(1) preempted the plaintiffs' claims, the United States District Court for the District of Columbia hinged its analysis on two questions: (1) whether the food upon which the plaintiffs sought to impose a duty was one subject to a standard of identity under the FDCA, and (2) whether the duty sought was identical to the FDCA labeling requirements. Id. at 107 (citation omitted).

First, the court concluded that milk was undisputedly subject to a standard of identity under the FDCA. Id. at 108. The plaintiffs thus sought to impose a requirement upon a food subject to a standard of identity. Id. Second, the court found that "a warning label of the nature requested by [the] plaintiffs would far exceed the labeling requirements mandated by the standard of identity established by" the FDA regulations. Id. The court noted that the FDA's standard of identity delineated a detailed list of information required to appear on a product's label, of which a warning label was not included. Id. Because the plaintiffs attempted to impose a non-identical requirement without following the procedures provided under the FDCA, see 21 U.S.C. § 343-1(b) (allowing deviations from the requirements pending approval through a formal application

process to the FDA), the court held that their claim was expressly preempted by the FDCA.  Id. at 109.

Similarly, Nemphos's claims are preempted by the FDCA because the Defendants' bottled water, baby food, and infant formula are subject to FDA regulations, and Nemphos seeks to impose non-identical labeling requirements upon them.

The FDA promulgated standard-of-identity regulations concerning bottled water.[5]  See Beverages: Bottled Water, 60 Fed.Reg. at 57076 (establishing a standard of identity for bottled water); 21 C.F.R. § 165.110 (2013) (providing a standard of identity for bottled water).  Namely, the FDA has already established a series of requirements for bottled water specifically regarding fluoride.  "Fluoride may be optionally added" to bottled water packaged within the United States, 21 C.F.R. § 165.110(a)(1), so long as the bottled water does "not contain fluoride in excess of [0.8 to 1.7 milligrams per liter] . . . based on the annual average of maximum daily air temperatures at the location where the bottled water is sold at retail."  Id. § 165.110(b)(4)(ii)(C).  "Imported bottled water to which fluoride is added shall not contain fluoride in excess of 0.8 milligram per liter."  Id. § 165.110(b)(4)(ii)(D).  Where

---

[5] A "standard of identity" is a regulation in which the FDA fixes the ingredients of, and consequently the definition of, a food.  62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 598 (1951).

bottled water exceeds these limits, its label must warn that it "Contains Excessive Fluoride" or "Contains Excessive Chemical Substances." See id. § 165.110(c)(3) (requiring a warning statement). Beyond these requirements, no FDA regulation requires a warning regarding dental fluorosis.

Infant formula and baby food marketed in the United States are also subject to FDA regulations. The FDA prohibits the addition of fluoride to food products other than bottled water, unless the product contains fluoridated public water as an ingredient. Id. § 170.45. Infant formula and baby food are under the purview of FDA regulations, see 21 U.S.C. §§ 342, 350a (regulating foods generally and infant formula), and are thus subject to these restrictions. Nemphos does not allege that Nestlé and Gerber violated these regulations or added fluoride to their infant formula and baby food products.

Moreover, federal law does not require products containing no added fluoride to bear information concerning dental fluorosis. See Turek v. Gen. Mills, Inc., 662 F.3d 423, 427 (7th Cir. 2011) (barring labeling requirements concerning inulin in fiber where no federal law imposes such requirement). Indeed, the specific labeling requirements for infant formula include no such disclosure. See 21 C.F.R. § 107.10 (delineating the labeling requirements for infant formulas).

The Defendants' products adhere to these labeling requirements, where the FDCA does not demand the Defendants warn of dental fluorosis. Granting Nemphos relief would thus impose an obligation upon them to warn customers of the risks of fluoride consumption, lest they remain susceptible to common law liability. The obligation to warn would be non-identical to the FDCA's labeling requirements.

That Nemphos seeks damages and not an express warning requirement is of no consequence. Assigning common law liability would nevertheless create a state requirement precisely prohibited by the FDCA. See Riegel v. Medtronic, Inc., 552 U.S. 312, 324 (2008) ("[R]eference to a State's 'requirements' includes its common-law duties. . . . [C]ommon-law liability is 'premised on the existence of a legal duty,' and a tort judgment therefore establishes that the defendant has violated a state-law obligation." (quoting Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 522 (1992)); Bates v. Dow Agrosciences LLC, 544 U.S. 431, 446 (2005) ("[P]etitioners' fraud and negligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging.'"). An obligation and/or duty of this nature is preempted by the FDCA, and Nemphos's claims will be dismissed.

### b.    Preemption of Health Claims on Food

The Defendants next argue Nemphos is preempted from using state tort law to require a health claim linking fluoride in bottled water, infant formula, or baby food to dental fluorosis. Nemphos maintains that the FDCA only preempts affirmative claims that advertise the specific health benefits of food products, and that dental fluorosis is the undesired aesthetic consequence of fluoride overconsumption, not a disease or health-related condition subject to the regulations.   The Court partly agrees with Nemphos.

As previously discussed, although Nemphos does not seek a requirement that the labels on the Defendants' products link fluoride to dental fluorosis, the common law liability she requests would nonetheless constitute a state requirement referenced under the FDCA.   Riegel, 552 U.S. at 324.   As a consequence, the Court must determine whether the relief Nemphos seeks would impose a duty upon the Defendants to make a health claim on their products.

The FDCA regulates health claims on food, providing that:

(a) [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce--

(5) any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to

the   requirement   of   section   343(r)   of   this
title . . . .

21 U.S.C. § 343-1(a)(5).

A  food  is  mislabeled  under  §  343(r)  where  it  expressly  or
impliedly  bears  a  health  claim  not  authorized  by  the  FDA.   Id. §
343(r)(1)(B).   The  FDA  defines  "health  claim"  as  "any  claim made
on  the  label  or  in  labeling  of  a  food,  including  a  dietary
supplement,  that  expressly  or  by  implication  .  .  .  characterizes
the  relationship  of  any  substance  to  a  disease  or  health-related
condition."   21  C.F.R.  §  101.14(a)(1);  see  also  Whitaker  v.
Thompson,  248  F.Supp.2d  1,  3  n.4  (D.D.C.  2002)  ("'Health  claims'
are  statements  that  describe  a  relationship  between  a  nutrient,
such  as  calcium,  and  a  disease  or  health-related  condition,  such
as  osteoporosis.").   "Substance"  is  defined  as  "a  specific  food
or  component  of  food,  regardless  of  whether  the  food  is  in
conventional  food  form  or  a  dietary  supplement  that  includes
vitamins,   minerals,   herbs,   or   other   similar   nutritional
substances."   21  C.F.R.  §  101.14(a)(2).   Neither  party  disputes
that  fluoride  is  a  substance.

The   question   is   whether   dental   fluorosis   constitutes   a
disease  or  health-related  condition.   The  FDA  defines  "disease"
and  "health-related  condition"  as  "damage  to  an  organ,  part,
structure,  or  system  of  the  body  such  that  it  does  not  function
properly  (e.g.,  cardiovascular  disease),  or  a  state  of  health

15

leading to such dysfunctioning (e.g., hypertension)." Id. § 101.14(a)(5). Although the FDA has not spoken directly as to whether dental fluorosis is a health-related condition, it has consistently characterized dental fluorosis as a "significant adverse aesthetic effect[]," rather than a condition affecting the functionality of teeth. See Beverages: Bottled Water, 58 Fed.Reg. 393, 401 (Jan. 5, 1993) (codified at 21 C.F.R. pts. 103, 129, 165 & 184) (noting further that the fluoride guidelines in bottled water are intended to "protect consumers from any adverse effects on the body, even those that may be characterized as aesthetic").

Its position is consistent with a ruling of the United States Court of Appeals for the District of Columbia Circuit affirming an opinion of the Environmental Protection Agency ("EPA") that dental fluorosis constitutes a cosmetic effect but not a health effect. See Natural Res. Def. Council, Inc. v. EPA, 812 F.2d 721, 724–25 (D.C. Cir. 1987) (finding reasonable the EPA's opinion that dental fluorosis was a cosmetic effect, not an adverse health effect, for the purposes of setting maximum fluoride levels under the Safe Drinking Water Act because it did not appear to cause mortal injury or the loss of function).[6]

---

[6] The EPA has since recognized, in a report it commissioned from the National Research Council, the distinction between

Because the FDA considers dental fluorosis to be an aesthetic effect, it would not be a health claim to link fluoride to dental fluorosis, and any obligation to do so falls outside the health claim preemption of the FDCA. This does not excuse the fact, however, that Nemphos's claims are preempted as state requirements not identical to the FDA's regulations. As a result, Nemphos's claims still fail.

### c.   Safety Concern

Nemphos further argues her claims are permissible through the NLEA's safety concern preemption exception. The Court disagrees because the use of fluoride in the Defendants' products does not implicate a safety concern.

Congress enacted a limited exception in the NLEA, declaring its express preemption "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or

---

dental fluorosis and severe dental fluorosis, which is characterized by the loss of enamel, noting that severe dental fluorosis may constitute an adverse health effect. Sulfuryl Fluoride; Proposed Order Granting Objections to Tolerances and Denying Request for a Stay, 76 Fed.Reg. 3422, 3430 (Jan. 19, 2011) (codified at 40 C.F.R. pt. 180). The FDA has also distinguished between dental fluorosis and severe dental fluorosis. See Drug Products for the Relief of Oral Discomfort for Over-the-Counter Human Use; Establishment of a Monograph, 47 Fed.Reg. 22,712, 22,751 (May 25, 1982) (codified at 21 C.F.R. pt. 354) (noting the level of fluoride consumption required for both conditions). This further suggests that, while severe dental fluorosis might be a health-related condition, dental fluorosis is not.

component of the food."   Pub.L.No. 101-535, 104 Stat 2353 §
6(c)(2); Holk v. Snapple Beverage Corp., 575 F.3d 329, 338 (3d
Cir. 2009).  On the one hand, the FDA defines "safe" or "safety"
as "a reasonable certainty in the minds of competent scientists
that the substance is not harmful under the intended conditions
of use."   21 C.F.R. § 170.3(i).   "Harm," on the other hand,
means "the capacity to injure or otherwise damage the health of
individuals consuming the additive."   Food Additives Permitted
for Direct Addition to Food for Human Consumption; Olestra, 61
Fed.Reg. 3118, 3119 (Jan. 30, 1996) (codified at 21 CFR pt.
172).  The FDA has already determined that fluoride is safe to
include in bottled water, and in products containing fluoridated
public water as an ingredient, if manufacturers abide by its
regulations.   See 21 C.F.R. § 170.45 (limiting the use of
fluoride   in   food   products); In   re   Bisphenol-A   (BPA)
Polycarbonate Plastic Prods. Liab. Litig., No. 1967, 2009 WL
3762965, *6 (W.D.Mo. Nov. 9, 2009) (concluding that "the
determination whether [an additive] is 'safe' is solely the
province of the FDA").

     Nemphos's allegations show the Defendants complied with
those regulations.   Moreover, the FDA, when considering the
consequences of consuming fluoride, did not consider dental
fluorosis injurious to one's health but rather an adverse

aesthetic effect.   See supra Part II.B.1.b.   Accordingly, the safety concern exception is inapplicable to Nemphos's case.

**2.   Substantive State Law Arguments**

The Defendants offer additional arguments as to why Nemphos's claims fail under Maryland law.   Understanding that federal law preempts each of Nemphos's claims, the Court will address two of those arguments in turn.

**a.   Fraud and the Maryland Consumer Protection Act**

Nemphos alleges unfair or deceptive trade practices in violation of the MCPA and fraud on two grounds: (1) the Defendants materially failed to disclose the risk of fluorosis in consuming their products and (2) Nestlé and Dannon advertised their fluoridated water as "the one designed with kids in mind." (Pl.'s Resp. & Opp'n to Defs.' Mot. to Dismiss ["Pl.'s Resp."] at 42, ECF No. 23).   The Defendants argue these claims fail because Nemphos does not plead them with the required specificity.   The Court agrees.

Federal Rule of Civil Procedure 9(b) imposes a higher pleading standard upon claims sounding in fraud, requiring the plaintiff to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b).   This standard requires the plaintiff to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained

19

thereby."  U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,
525 F.3d 370, 379 (4th Cir. 2008) (citations and internal
quotation marks omitted).  "These facts are often 'referred to
as the 'who, what, when, where, and how' of the alleged fraud.'"
Id. (citations omitted).

Here, Nemphos generally alleges that Nestlé and Dannon
marketed their fluoridated bottled water as "the one designed
with kids in mind," (Compl. ¶¶ 11–13), with no mention as to the
time, place, or particular marketing materials of the alleged
fraud.  She has not, therefore, pled her fraud and MCPA claims
with the particularity required under Rule 9(b).

Nemphos contends that her allegations satisfy Rule 9(b)
because pleading omission with that degree of particularity "is
tantamount to asking [her] to prove a negative."  (Pl.'s Resp.
at 43).  The Court disagrees.  Rule 9(b)'s specificity
requirement cannot be ignored.

Regarding claims of omission, while Rule 9(b)'s standard
undergoes a more relaxed analysis, Hill v. Brush Engineered
Materials, Inc., 383 F.Supp.2d 814, 822 (D.Md. 2005) (citation
omitted), Nemphos fails to satisfy even this relaxed standard.
In cases involving partial disclosures, the plaintiff must
"specify (1) the partial and fragmentary statements of fact that
created a duty . . . to speak, (2) who made the statements, (3)
when the statements were made, and (4) how she came to rely on

them." Id. at 823.  "To withstand dismissal, she needs to make these allegations with particularity and be especially clear about how and when she came to know of the partial disclosures noted in the Complaint and how she relied upon them." Id.

Nemphos predicates her fraud and MCPA claims on Nestlé and Dannon's partial disclosure that their fluoridated bottled water is "the one designed with kids in mind," (Compl. ¶¶ 11-13), but she does not allege when the disclosure was made, how it was communicated, how it became known, or how it had been relied upon.  Nemphos only offers that the Defendants knew or should have known she would rely on the disclosure, and that she relied on it to her detriment. (Id. ¶¶ 66, 70-71, 80).  Her conclusory assertions are not enough to satisfy Rule 9(b)'s relaxed analysis.[7]

### b.   Breach of Implied Warranties

In the Complaint, Nemphos alleges breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose under a single claim.  The Defendants challenge both, arguing first that Nemphos's claim fails because

---

[7] Nemphos's fraud and MCPA claims may present an additional issue in that she appears to advance them on her own behalf, even though she brings this action as her daughter's next friend.  See Brown v. Daniel Realty Co., 976 A.2d 300, 314-18 (Md. 2009) (discussing whether, and to what extent, a next friend is a "party" when representing a minor litigant). Regardless, even if this ambiguity were reconciled, Nemphos still fails to plead either claim with the specificity required by Rule 9(b).

she did not provide notice before filing suit.   Nemphos contends that her daughter was not the buyer and had no duty to provide notice.   This Court agrees.

Once a buyer accepts goods, the Maryland Commercial Code requires him to notify the seller of a breach "within a reasonable time after he discovers or should have discovered any breach."   Md. Code Ann., Com. Law § 2-607(3)(a) (West 2013). This requires the buyer to give notice to his immediate seller to preserve any right of action for breach of an implied warranty.   Lloyd v. Gen. Motors Corp., 575 F.Supp.2d 714, 722-23 (D.Md. 2008) (citing Firestone Tire & Rubber Co. v. Cannon, 452 A.2d 192, 196 (Md.Ct.Spec.App. 1982)).   The Court of Appeals of Maryland has consistently held that this requirement only applies to the actual buyer and does not extend to third-party beneficiaries.   See, e.g., Mattos, Inc. v. Hash, 368 A.2d 993, 996-97 (Md. 1977) (concluding that third-party beneficiaries are under no duty to notify the seller of a breach before recovering for breach of an implied warranty); Phipps v. Gen. Motors Corp., 363 A.2d 955, 962 (Md. 1976) (same); Frericks v. Gen. Motors. Corp., 363 A.2d 460, 465 (Md. 1976) (same).

C.G.N. did not purchase the Defendants' products and, as a third-party beneficiary, was not required to give notice of a breach before an implied warranty claim could be maintained on

her behalf.  The Maryland Commercial Code does not bar her claim in this regard.

The Defendants argue, however, two additional reasons why Nemphos's claim should fail.  First, Nemphos's claim is barred by the Maryland Commercial Code's four-year statute of limitations for breach of implied warranty claims.  See Md. Code Ann., Com. Law § 2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.").  The statute of limitations begins to run "on the date the breach occurs, regardless of the aggrieved party's lack of knowledge of the alleged breach." Lloyd, 575 F.Supp.2d at 721.  Nemphos alleges she last purchased the Defendants' products in 2005, seven years prior to the start of this action.  (Compl. ¶ 32).  The latest a cause of action could have accrued was well beyond the statutory period.  The statute of limitations thus bars her breach of implied warranty claim.

The Defendants next argue Nemphos's claim for breach of the implied warranty of fitness for a particular purpose specifically fails because she does not allege purchasing the Defendants' products for a purpose other than their ordinary use.

Consumers can recover for breach of the implied warranty of fitness for a particular purpose under Maryland law, Md. Code Ann., Com. Law § 2-315(1), but only if:

(1) The seller [has] reason to know the buyer's particular purpose.

(2) The seller [has] reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods.

(3) The buyer . . . rel[ies] upon the seller's skill or judgment.

Ford Motor Co. v. Gen. Accident Ins. Co., 779 A.2d 362, 374–75 (Md. 2001) (citation omitted).

The implied warranty of fitness for a particular purpose only applies if the product is used for a specific, non-ordinary purpose. Lowe v. Sporicidin Int'l, 47 F.3d 124, 132–33 (4th Cir. 1995). Because Nemphos does not allege that the Defendants' products were used for a non-ordinary use, her breach of the implied warranty of fitness for a particular purpose also fails and must be dismissed.

### 3.  Leave to Amend

Nemphos requests leave to amend any deficiencies in her Complaint, which the Court will deny. Leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2). Accordingly, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). Because the FDCA preempts Nemphos's

claims, amendment of her Complaint would be futile.  Nemphos's request for leave to amend will be denied.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT the Defendants' Motions to Dismiss (ECF Nos. 16, 17) Nemphos's Complaint (ECF No. 1).

Entered this 21st day of August, 2013

/s/

_____
George L. Russell, III
United States District Judge